# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 23-102V

|  |  |
|---|---|
| CHRISTINA ANDERSON,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: January 28, 2025 |

*Emily Beth Ashe*, Anapol Weiss, Philadelphia, PA, for Petitioner.

*Ryan Pohlman Miller*, U.S. Department of Justice, Washington, DC, for Respondent.

### **DISMISSAL DECISION**[1]

On January 26, 2023, Christina Anderson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered from Guillain-Barré syndrome ("GBS") as a result of an influenza ("flu") vaccine administered on November 19, 2021. Petition at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). For the reasons discussed below, I hereby deny entitlement and Petitioner's claim is accordingly **DISMISSED.**

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.  **Relevant Procedural History**

Shortly after initiating her claim, Petitioner filed her vaccination record, medical records, and affidavit, followed by a statement of completion. ECF Nos. 6-10. On November 14, 2023, following my own review of the filed record (and while this case awaited Respondent's medical review), Petitioner was ordered to show cause why this case should not be dismissed "in its entirety" – as it appeared onset of her symptoms did not meet the Table's requirements for a flu vaccine-GBS claim. ECF No. 16 at 4. I also, however, afforded Petitioner an opportunity to address onset in the context of a potentially-viable causation-in-fact claim. *Id.* at 3. In reaction, Petitioner filed a status report stating that "she has determined that no additional evidence exists to submit at this time." ECF No. 17. Petitioner has since submitted no additional evidence.

As will be discussed in more detail below, the record preponderates in favor of the conclusion that Petitioner's GBS onset occurred too soon post-vaccination to meet the Table timeframe – and, given the record, such a short onset would also not be medically-acceptable even applying a non-Table, causation-in-fact analysis.

II.  **Factual Background**

A more complete recitation of the facts can be found in the petition. Although I have reviewed all of the records filed to date, I have limited my discussion in this Decision to the records most relevant to the issue of entitlement, with a particular focus on the entries bearing on the *onset* of Petitioner's alleged injury.

Petitioner received the subject vaccine on November 19, 2021. Ex. 2 at 3. On December 1, 2021 – approximately 12 days post vaccination – Petitioner went to her primary care provider ("PCP") for a routine visit. Ex. 3 at 34. Petitioner reported that "[s]ince [the] influenza vaccine [on] 11/19/21[, she has had] continuous generalized paresthesias and [an] itching sensation throughout [her] whole body keeping [her] awake at night." *Id.* at 34-36. The assessment included paresthesias, and she received a referral to a neurologist and a prescription for Gabapentin. *Id.*; *see also* Ex. 7 at 3.

On December 7, 2021, Petitioner saw a neurologist for evaluation of paresthesias. Ex. 4 at 4. She stated that she had received a flu vaccine on November 19, 2021, and "[o]n [] November 20th[,] she woke up with the [sic] sensations in the bottom of her feet; paresthesias as well as itching within 24 hours the sensations and has weeks ended upper body involving her hands and arms."[3] *Id.* She also complained of "excruciating pain

---

[3] The exact language of this entry is included here and appears to contain several typographical errors. I thus am unable to glean the precise meaning of the latter part of this entry.

2

and itching" but denied weakness. *Id.* A physical examination revealed a decrease in "all primary modalities" but "preserved reflexes." *Id.* at 5. Petitioner was assessed with GBS and paresthesias, and her physician recommended a lumbar puncture, EMG,[4] and MRIs.[5] *Id.* at 6; *see also* Ex. 7 at 6-7.

During Petitioner's December 17, 2021 lumbar puncture, the "reason for exam" was listed as "[n]umbness [on the] left side of [her] face and [a] burning sensation up [her] leg since [her] influenza shot." Ex. 6 at 67. The lumbar puncture showed a cerebrospinal fluid protein level of 63 (flagged as elevated), and her final diagnoses were listed as GBS and paresthesias of the skin. *Id.* at 60-61, 65.

Beginning in late January 2022, Petitioner sought care with an ophthalmologist for double and blurry vision in the setting of an "autoimmune syndrome." *See,* e.g., Ex. 8 at 2. She also saw a neuro-ophthalmologist for "evaluation of blurry vision at a distance" versus diplopia in the setting of GBS, on June 21, 2022. Ex. 10 at 3, 6. Petitioner reported that on "November 19, 2021, she was given [the] flu vaccine and felt intermittent paresthesias of the lower extremities within 24 hours." *Id.* at 6. She continued that on "[t]he following day, she fe[lt] head to toe paresthesias that progressively [got] worse throughout the next week[;]" which led to her GBS diagnosis. *Id.* A "resident/fellow assessment" from the same date stated that "[o]n November 19, 2021, she was given [a] flu vaccine and within 24 hours felt intermittent peripheral paresthesias that progressed to systemic paresthesias with in [sic] 48 hours and burning neuropathic pain." *Id.* at 10.

Petitioner's affidavit does not contain descriptions regarding the onset of her GBS-related symptoms. *See generally,* Ex. 12. There are no records of any subsequent treatment.[6]

---

[4] Petitioner's December 22, 2021 upper body EMG was normal. Ex. 5 at 4-5. Her December 29, 2021 lower body EMG showed "electrophysiological evidence suggesting a sensory polyneuropathy of the lower extremities." *Id.* at 3.

[5] Petitioner's December 10, 2021 brain and spine MRIs showed no acute abnormalities. Ex. 5 at 6-8.

[6] I also note that it appears at least one of Petitioner's treaters assessed her with chronic inflammatory demyelinating polyneuropathy ("CIDP") (a long-term form of GBS), which is another exclusionary criterion for Petitioner's ability to establish a Table GBS claim. *See,* e.g., Ex. 4 at 1 (a January 3, 2022 neurology note reflecting Petitioner was assessed with CIDP); Ex. 9 at 2-4 (January 31 and April 26, 2022 follow-up visits with Petitioner's neurologist noting an assessment of CIDP). These assessments do not change the medically-acceptable timeframe for the onset of this and/or similar demyelinating autoimmune conditions as being inconsistent with Petitioner's symptomology and progression.

### III.     Applicable Legal Standards

Under Section 13(a)(1)(A) of the Act, a petitioner must demonstrate, by a preponderance of the evidence, that all requirements for a petition set forth in section 11(c)(1) have been satisfied. A petitioner may prevail on her claim if the vaccinee for whom she seeks compensation has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the Table). Section 11(c)(1)(C)(i). The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). If petitioner establishes that the vaccinee has suffered a "Table Injury," causation is presumed.

If, however, the vaccinee suffered an injury that either is not listed in the Table or did not occur within the prescribed time frame, petitioner must prove that the administered vaccine caused injury to receive Program compensation on behalf of the vaccinee. Section 11(c)(1)(C)(ii) and (iii). In such circumstances, petitioner asserts a "non-Table or [an] off-Table" claim and to prevail, petitioner must prove her claim by preponderant evidence. Section 13(a)(1)(A). This standard is "one of . . . simple preponderance, or 'more probable than not' causation." *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1279-80 (Fed. Cir. 2005) (citing *Hellebrand v. Sec'y of Health & Hum. Servs.*, 999 F.2d 1565, 1572-73 (Fed. Cir. 1993)). The Federal Circuit has held that to establish an off-Table injury, petitioners must "prove . . . that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface v. Sec'y of Health & Hum. Servs.*, 165 F.3d 1344, 1351-52 (Fed. Cir 1999). The received vaccine, however, need not be the predominant cause of the injury. *Id.* at 1351.

The Federal Circuit has indicated that petitioners "must show 'a medical theory causally connecting the vaccination and the injury'" to establish that the vaccine was a substantial factor in bringing about the injury. *Shyface*, 165 F.3d at 1352-53 (quoting *Grant v. Sec'y of Health & Hum. Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992)). The Circuit Court added that "[t]here must be a 'logical sequence of cause and effect showing that the vaccination was the reason for the injury.'" *Id.* The Federal Circuit subsequently reiterated these requirements in its *Althen* decision. *See* 418 F.3d at 1278. *Althen* requires a petitioner

> to show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing

4

> of a proximate temporal relationship between vaccination and injury.

*Id.* All three prongs of *Althen* must be satisfied. *Id.*

Finding a petitioner is entitled to compensation must not be "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). As noted by the Federal Circuit, "[m]edical records, in general, warrant consideration as trustworthy evidence." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993, F.2d 1525, 1528 (Fed. Cir. 1993). Testimony offered after the events in questions is considered less reliable than contemporaneous reports because the need for accurate explanation of symptoms is more immediate. *Reusser v. Sec'y of Health & Hum. Servs.*, 28 Fed. Cl. 516 (1993). Accordingly, if the medical records are clear, consistent, and complete, then they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03–1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

However, the Federal Circuit has also noted that there is no formal "presumption" that records are accurate or superior on their face to other forms of evidence. *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). There are certainly situations in which compelling oral or written testimony (provided in the form of an affidavit or declaration) may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *Campbell v. Sec'y of Health & Hum. Servs.*, 69 Fed. Cl. 775, 779 (2006); *Lowrie,* 2005 WL 6117475, at *19 ("[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent"). In determining the accuracy and completeness of medical records, the Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *LaLonde v. Sec'y of Health & Hum. Servs.,* 110 Fed. Cl. 184, 203-04 (2013), *aff'd,* 746 F.3d 1334 (Fed. Cir. 2014).

**IV.    Analysis**

Petitioner cannot establish entitlement under any possible version of the claim – Table or otherwise.

The contents of my order to show cause (ECF No. 16) set forth why the Table elements for a flu-GBS claim cannot be met. The medical records preponderantly establish that Petitioner's onset most likely occurred less than three days post vaccination

(and likely within a day) – thus sooner than the 3-42 day timeframe provided for by the Vaccine Injury Table. 42 C.F.R. § 100.3; Ex. 3 at 34-36; Ex. 4 at 4; Ex. 6 at 67; Ex. 10 at 6, 10.

As the record establishes, Petitioner consistently claimed to have begun experiencing neurologic symptoms and paresthesias *within a day of vaccination*. And this is not a case where the petitioner used imprecise or vague language as to the time of onset. *See Flowers v. Sec'y of Health & Hum. Servs.,* No. 20-285V, 2024 WL 2828211, at *16 (Fed. Cl. Spec. Mstr. May 8, 2024), *mot. for review den'd,* 173 Fed. Cl. 613, 626 (affirming the chief special master's decision to characterize notations such as "shortly after" and "since" as beginning "very" close in time to, and often with 24-48 hours, of vaccination, and that the presence of nonspecific terms does not mandate a particular conclusion regarding onset). Rather, Petitioner here *specifically* placed onset as beginning *within 24 hours* of vaccination. *See,* e.g., Ex. 4 at 4; Ex. 10 at 6, 10. Thus, the Table timeframe could not be preponderantly established. *See Block v. Sec'y of Health & Hum. Servs.,* No. 19-969V, 2021 WL 2182730, at *9 (Fed. Cl. Spec. Mstr. Apr. 26, 2021) (finding a one-day onset was inconsistent with a Table flu-GBS claim).

It was also unlikely Petitioner could succeed with the claim if advanced as a causation-in-fact matter, in which all three *Althen* prongs would need to be met. A one-day onset has generally not been shown to be medically acceptable, as required by the third *Althen* prong. *See,* e.g., *Rowan v. Sec'y of Health & Hum. Servs.,* No. 17-760V, 2020 WL 2954954, at *16-19 (Fed. Cl. Spec. Mstr. Apr. 28, 2020) (finding a GBS onset sooner than three days post vaccination was not scientifically or medically supported by the record, given that GBS is known to be mediated by antibodies produced via the adaptive immune system, and this process takes longer than 3 days to result in symptoms); *Orton v. Sec'y of Health & Hum. Servs.*, No. 13-631V, 2015 WL 1275459, at *3-4 (Fed. Cl. Spec. Mstr. Feb. 23, 2015) (finding a one-day onset of GBS following a flu vaccination was not substantiated by the evidence); *Velasquez v. Sec'y of Health & Hum. Servs.,* No. 19-1703V, 2024 WL 829599, at *16 (Fed. Cl. Spec. Mstr. Jan. 31, 2024) (finding that a short, one-day onset of GBS is not medically-acceptable, absent a showing specific to the claimant's circumstances that would justify stretching the Table timeframe for onset of GBS following receipt of a flu vaccine); *see also Flowers,* 173 Fed. Cl. 613 (upholding dismissal of an *entire claim* where it was determined that onset of the petitioner's GBS occurred too soon to qualify as on- or off-Table claim (one-to-two days following vaccination)).

My order to show cause nevertheless left the door open, so to speak, for Petitioner to offer evidence showing how a one-day post-vaccination onset could be medically acceptable. In some circumstances claimants have been able to satisfy this prong – primarily where other factors (usually relating to the petitioner's own health, and evident in the medical record) establish that several elements resulted, synergistically, in a faster

but aberrant immune stimulation process. *See,* e.g., *Lehrman v. Sec'y of Health & Hum. Servs.*, No. 13-901V, 2018 WL 1788477, at *14-19 (Fed. Cl. Spec. Mstr. Mar. 19, 2018) (finding entitlement for a petitioner who established a pre-vaccination history of an upper respiratory infection, which, *in combination with* the flu vaccine, was found to have resulted in an upregulation of the petitioner's immune system that led to a rapid onset of GBS and thus a 1-day onset was appropriate); *Shyface*, 165 F.3d at 1352-53 (entitlement can be found as long as vaccine was a "substantial factor" in causation, even if not exclusive).

But despite being afforded the opportunity, Petitioner has failed to submit *any* additional evidence on this point. And she has cited *no* contrary cases or evidence finding a one-day onset to be medically acceptable. Thus, her claim is properly dismissed in its entirety.

## Conclusion

A Program entitlement award is only appropriate for claims supported by preponderant evidence. Here, Petitioner has not made such a showing. Petitioner is therefore not entitled to compensation.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[7]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.